UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY BEST, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-02549-TWP-MJD |
| ) | |
| STATE OF INDIANA, INDIANA ) | |
| DEPARTMENT OF CORRECTION, DUSHAN ) | |
| ZATECKY, JOHN SAFFORD, JEFFERY ) | |
| KING, BLAINE HURT, WALTER PETERSON, ) | |
| HERBERT DUNCAN, CORIZON HEALTH, ) | |
| INC., and PAUL A. TALBOT M.D., ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON STATE DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants the State of Indiana, Indiana Department of Correction ("IDOC"), Superintendent Dushan Zatecky, and IDOC staff John Safford, Jeffery King, Blaine Hurt, Walter Peterson, and Herbert Duncan (collectively, "State Defendants") (Filing No. 21). After spending more than two years in administrative segregation at the Pendleton Correctional Facility, Plaintiff Larry Best, Jr. ("Best") was moved back into the general population at the prison, and one month later, he was attacked and seriously injured by fellow inmates. Best initiated this lawsuit against the State Defendants as well as Corizon Health, Inc. ("Corizon"), and Paul A. Talbot, M.D. ("Dr. Talbot") for violating his Eighth, Ninth, and Fourteenth Amendment rights by failing to protect him and having a deliberate indifference toward his health and safety. The State Defendants filed a Motion to Dismiss, asserting various arguments for dismissal of Best's four claims. For the following reasons, the Court **grants in part and denies in part** the State Defendants' Motion to Dismiss.

# I. **BACKGROUND**

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Best as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Best was an inmate at the Pendleton Correctional Facility ("Pendleton"). He is now an inmate at Miami Correctional Facility in Bunker Hill, Indiana. While in custody at Pendleton, Best was held in administrative segregation because of threats of violence against him by members of a prison gang called the Brotherhood of the Aryan Nation ("Aryan brotherhood"). Members of the Aryan brotherhood had physically beaten Best and threatened his life because he refused to join their gang. Because of the attack and threats of violence, Best was held in segregated housing for more than two years leading up to July 5, 2015 ([Filing No. 1 at 2](Filing No. 1 at 2)–3).

On July 6, 2015, Defendant King, a caseworker with IDOC, informed Best that he would be returned to the general population at Pendleton. Best told King that he was fearful to return to the general prison population because members of the Aryan brotherhood who had attacked and threatened him were still in Pendleton's general population. King told Defendant Safford, a unit team manager with IDOC, about Best's concern for his safety in the general population. King and Safford knew that inmates are routinely moved among the housing units and Best likely would not be safe from the Aryan brotherhood's threats. Despite this potential threat, Best was moved from administrative segregated housing into the general prison population. *Id.* at 3.

Best alleges that "Duncan and Peterson were responsible for investigation of the continued threat to [Best] if he was returned to general population but failed to make any investigation and allowed [Best] to return to general population with reckless disregard for [Best's] safety." *Id.*

2

When he was moved out of segregated housing, the general population guards and officers were surprised by Best's placement in the general prison population because of threats against him. *Id.*

On August 7, 2015, one month after being moved back to the general prison population, Best was attacked by members of the Aryan brotherhood. His attackers used large river rocks and other objects, which the prison officials had placed in front of prison cell houses, presumably for decoration. These large river rocks were accessible to the violent inmates at Pendleton and could be and were used as weapons. Although prison officials knew of the gang's threats against Best, they failed to take measures to secure the prison to provide for his safety. *Id.* at 3–4.

The attack occurred while Best was leaving the medical line at the prison infirmary, which was located in a walkway dubbed "death alley" because it was an area known for inmate-on-inmate assaults. The area was not well supervised, and Best alleges prison officials, including Superintendent Zatecky, knew the area was dangerous but were deliberately indifferent to the safety of the inmates. *Id.*

Defendant Hurt was the officer in charge at the time of the attack, and he failed to supervise the movement of inmates through "death alley" to and from the infirmary for their daily medication. Pendleton was understaffed on the day of Best's attack, and the staff failed to monitor inmate movement from place to place and thus could not prevent the attack on Best. Further, IDOC failed to provide adequate supervision of the inmates at Pendleton. Best alleges that Superintendent Zatecky knew the prison was "extremely short on staff" because he had admitted this fact only months before the attack on Best, and this staff shortage allowed gang violence within the prison and cultivated an environment conducive to inmate violence. *Id.*

Best sustained severe lacerations and bruises to his head, face, back, shoulders, arms, and right hand and wrist during the attack. He was bleeding profusely and sought medical treatment

3

for his injuries ([Filing No. 1 at 4](#)).  Dr. Talbot, an employee of Corizon, was on duty at the time of Best's attack.  At that time, Corizon contracted with Pendleton to provide medical care at the prison.  Dr. Talbot treated Best's injuries by suturing his cuts and stapling the head wounds, which would be fastest.  However, Dr. Talbot did so without first administering an anesthetic to Best's head in disregard to the pain that Best would endure.  *Id.* at 5.

Dr. Talbot failed to monitor Best's condition after the initial suture and staples to his head.  Instead, Dr. Talbot returned Best to his cell with the severe head injury without anyone to observe his condition.  Because of the lack of monitoring, Best suffered another injury to the head when he blacked out in his cell, falling against the wall and onto the floor.  Best suffered dizziness, headaches, nausea, and vomiting, as well as other concussion symptoms, and pain in his back, neck, head, and elbow.  Best has difficulty remembering and concentrating.  Dr. Talbot, Corizon, and IDOC delayed processing, referring, and approving diagnostic tests necessary for treatment of Best's injuries, and they continued to pursue ineffective treatment for his condition that continues to worsen.  *Id.* at 5, 11–12.

On September 26, 2016, Best filed this lawsuit asserting claims under 42 U.S.C. § 1983 ("Section 1983") and state tort law against the State Defendants, Corizon, and Dr. Talbot.  Best alleges his Eighth, Ninth, and Fourteenth Amendment rights were violated because the Defendants failed to protect him, had a deliberate indifference and reckless disregard toward his health and safety, provided inadequate medical care, and deprived him of the opportunity to serve his prison sentence without constant fear of threats and violence.  Corizon and Dr. Talbot filed an Answer in response to Best's Complaint, and the State Defendants filed a Motion to Dismiss.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

In their Motion to Dismiss, the State Defendants address each of the four counts asserted in Best's Complaint and advance various arguments for the dismissal of each of the counts as to specific State Defendants. For the sake of convenience and simplicity, the Court will address each argument in the order presented by the State Defendants.

### A. Count I against the State of Indiana and IDOC

Count I of the Complaint alleges deliberate indifference under Section 1983. The State Defendants argue Count I should be dismissed as to the State of Indiana and IDOC because they are not considered "persons" for purposes of Section 1983. The United States Supreme Court has held that states, state agencies, and state officials sued in their official capacity for damages are not "persons" under Section 1983. *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, they assert, Best's constitutional claims brought under Section 1983 against the State of Indiana and IDOC should be dismissed.

In response, Best acknowledges that he "makes no allegation of liability of the State of Indiana and the IDOC under 42 U.S.C. § 1983." ([Filing No. 27 at 2](#).) Because the State of Indiana and IDOC cannot be considered "persons" under Section 1983, and because Best concedes that he is not alleging liability on the part of the State of Indiana and IDOC under Section 1983, the Court **GRANTS** the Motion to Dismiss Count I against the State of Indiana and IDOC.

### B. Count I against Zatecky, Safford, Peterson, and Duncan

Next, the State Defendants argue Count I should be dismissed as to Zatecky, Safford, Peterson, and Duncan because Section 1983 does not allow for vicarious liability. They rely on Seventh Circuit case law, which held, "An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation. . . . [He must be]

6

personally involved in the constitutional wrongdoing." *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (citation and quotation marks omitted).

In the Complaint, Best alleges Zatecky was the Superintendent of Pendleton and Safford, Peterson, and Duncan were employees of IDOC who participated in the decision to reclassify him as an inmate in the general population. The State Defendants argue that the Complaint alleges Hurt was the officer responsible for Best's safety at the time of the attack, but the allegations regarding Zatecky, Safford, Peterson, and Duncan "begin and end solely with the fact that they 'were employees of the IDOC working at PCF whom participated in the decisions and omissions related to the reclassification of [Best].'" ([Filing No. 22 at 7](), quoting [Filing No. 1 at 5](), ¶5.) They also argue that the Complaint fails to allege that Zatecky, Safford, Peterson, and Duncan had any actual, first-hand knowledge of the threat against Best or that they were present during the attack or had any personal involvement regarding the attack. They argue that the allegations in Count I against these individual Defendants is based solely on their employment with IDOC and their supervisory or managerial roles that required them to oversee the inmate classification decisions. They contend Zatecky, Safford, Peterson, and Duncan cannot be held liable under Section 1983 simply because they oversee a decision-making process. The State Defendants rely on *Ashcroft v. Iqbal*, which held, "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676.

Best responds that he did not allege Count I against Zatecky, Safford, Peterson, and Duncan under theories of vicarious liability or *respondeat superior*. Rather, he brought this claim against these individual Defendants under Section 1983 for violation of his Eighth Amendment rights based on these Defendants' personal involvement in reclassifying his status. Best notes that his

7

allegations assert liability based on his removal from the safety of administrative segregation and placement in the general prison population with gang members who had previously attacked and threatened him. He argues that King, Safford, Peterson, and Duncan personally participated in the decision to return him to the general population.

Best highlights various allegations in his Complaint: (1) Best told King that he feared threats from the gang, and King told Safford about Best's concern for his safety in the general population ([Filing No. 1 at 3](), ¶3); (2) King and Safford knew that inmates are routinely moved among the housing units and that Best likely would not be safe from the prison gang's threats but moved him anyway, *id.*; and (3) Peterson and Duncan were responsible to investigate the continued threat to Best if he returned to general population, but they failed to make any investigation and allowed Best to return to the general prison population, *id.* at ¶5. Best also points to allegations in his Complaint that Zatecky was aware that Pendleton was overcrowded and understaffed, thereby creating a dangerous and potentially violent environment.

Best argues that his allegations against the individual Defendants are sufficient to survive dismissal because direct participation in a constitutional violation is not necessary to establish liability; rather, it is enough if a defendant acquiesces in the constitutional violation. *See Kelly v. Municipal Courts* for this proposition. 97 F.3d 902, 909 (7th Cir. 1996) ("A defendant will not be liable for a constitutional violation under § 1983 if the defendant merely exercised supervisory authority over those who violated the plaintiff's rights and otherwise failed to participate in any violation of the plaintiff's rights. In order for a defendant to be held liable under § 1983, the plaintiff must establish that the defendant was personally involved or acquiesced in the alleged constitutional violation.").

A review of the Complaint reveals that Best alleged Safford, Peterson, and Duncan had various levels of knowledge concerning the threats against him and that they were, to varying degrees, personally involved in the decision to place him back in the general prison population with an ongoing threat to his safety. These allegations are sufficient at this stage of the litigation to support an Eighth Amendment claim against Safford, Peterson, and Duncan because they were personally "involved or acquiesced in" the actions that led to Best's attack. Therefore, the Court **denies** the Motion to Dismiss Count I against Safford, Peterson, and Duncan.

Regarding the claim against Zatecky, the allegations appear to assert liability based solely on his supervisory authority over those who violated Best's rights. The allegations against Zatecky describe a general concern, not an assertion of liability directed at Best's constitutional injury. Under *Kelly*, personally acquiescing in an alleged constitutional violation can support a Section 1983 claim, but merely exercising supervisory authority over those who allegedly violated a plaintiff's rights is not enough. Best's Complaint alleges a mere exercise of supervisory authority on the part of Zatecky. Thus, the Court **GRANTS** the State Defendants' Motion to Dismiss Count I against Zatecky.

### C. Count II against IDOC and Zatecky

Under Count II of the Complaint, Best alleges a claim against IDOC and Zatecky for violating the Eighth Amendment by overcrowding and understaffing Pendleton, thereby increasing the likelihood for violence and attacks among inmates generally, and which resulted in the attack on Best specifically. In his claim for relief under Count II, Best requests a declaratory judgment that IDOC and Zatecky violated the "Constitution of the United States" and "compensatory damages for personal injury, pain and suffering, emotional distress and for future pain and suffering and punitive damages." (Filing No. 1 at 9.)

The State Defendants assert that Count II should be dismissed because the Eleventh Amendment bars damages claims in federal court against the state, its agencies, and its officials. They argue that Best alleges only conclusory statements that Zatecky knew Pendleton was overcrowded and understaffed and that, as a result, inmates suffered an increased threat of violence. They further argue that the allegations in the Complaint fail to provide any factual support regarding how Zatecky knew of overcrowding and understaffing or how Zatecky had any personal involvement regarding Best's attack or the conditions of his confinement. The State Defendants argue Zatecky is named as a defendant simply because he is the Superintendent of Pendleton, and thus, the claim against him is in his official capacity only. Because Best requests compensatory monetary damages, the State Defendants assert that the Eleventh Amendment bars this claim in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984) ("an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state," and "[t]his jurisdictional bar applies regardless of the nature of the relief sought," and furthermore, "42 U.S.C. § 1983 does not override States' Eleventh Amendment immunity").

Best responds that the Fourteenth Amendment makes the Eighth Amendment applicable to the states, the Eighth Amendment prohibits cruel and unusual punishment, and he asserted this claim on the basis of an Eighth Amendment violation for failing to provide a safe environment for Best and for deliberate indifference toward his safety and medical care. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (Eighth Amendment is applicable to the States through the Due Process clause of the Fourteenth Amendment and prohibits cruel and unusual punishment). Best argues that the Eleventh Amendment is not a bar to this claim because it is specifically brought through the Fourteenth Amendment's application of the Eighth Amendment to the states. Best then asserts

that he has alleged sufficient facts to support a claim against IDOC and Zatecky for creating the dangerous environment at Pendleton that led to his attack.

Replying to Best, the State Defendants do not again raise the Eleventh Amendment argument, but rather, they explain the Eighth Amendment is violated when an inmate is attacked only "if deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). They argue that "general requests for help and expressions of fear are insufficient to alert guards to the need for action," citing to *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008) ([Filing No. 30 at 2](#)). A deliberate indifference claim requires more than a general fear or request on the part of the inmate. *Id.* A failure to protect claim requires more than just knowledge of a mere general risk of violence in a correctional facility. *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). The State Defendants assert Best's allegations against IDOC and Zatecky are only broad generalizations about the inherently dangerous life inside a prison, which is not sufficient to state a claim under the Eighth Amendment.

After reviewing Best's Complaint as a whole as well as Count II specifically, the Court determines that Count II has not been sufficiently pled to support an Eighth Amendment claim against IDOC and Zatecky. Concerning these Defendants, the allegations show a broad, generalized concern about prison safety, overcrowding, and understaffing. Under Seventh Circuit standards, the allegations fall short by not providing a minimal factual basis regarding IDOC and Zatecky's knowledge of and involvement with Best's circumstances. Best alleges that Zatecky "knew or should have known of the excessive risk to Plaintiff's safety and failed to protect Plaintiff," ([Filing No. 1 at 9](#), ¶8); however, this unsupported assertion is not sufficient to support

11

Best's claim. Therefore, the Court **GRANTS** the State Defendants' Motion to Dismiss Count II against IDOC and Zatecky.

### D. Count III against Zatecky, Peterson, Duncan, Safford, and Hurt

Best asserts a claim under Count III against Zatecky, Peterson, Duncan, Safford, and Hurt for compensatory damages for personal injury, pain and suffering, emotional distress, and future pain and suffering because of their decision to reassign Best to the general prison population despite knowing the threat of violence against him by a gang that had previously attacked him.

The State Defendants assert that Count III should be dismissed because Zatecky, Peterson, Duncan, Safford, and Hurt are statutorily immune from state law tort claims under the Indiana Tort Claims Act ("the Act"). They explain Best can bring these state law tort claims only against a government agency, not these Defendants individually.

The State Defendants argue that if a plaintiff alleges a government employee was acting within the scope of their employment, the plaintiff is absolutely barred from bringing a claim against the employee personally unless the government entity responds that the employee was acting outside the scope of their employment. Ind. Code § 34-13-3-5. If a plaintiff does not allege that the employee was acting within the scope of their employment, the plaintiff still cannot sue the employee personally unless the complaint alleges that the employee's acts were criminal, clearly outside the scope of the employee's employment, malicious, willful and wanton, or calculated to benefit the employee personally. *Id.* The complaint cannot assert these allegations in conclusory fashion; rather, the plaintiff must assert a reasonable factual basis to support his allegations. *Id.*

The State Defendants argue that Best's Complaint alleges Zatecky, Peterson, Duncan, Safford, and Hurt are liable based on their decision to reclassify Best and move him to the general

prison population, which are acts within the scope of their employment. Each of these individual Defendants was an employee of IDOC at the time of the incidents, and each of them was acting within the scope of their employment. The State Defendants have not answered that they were acting outside the scope of their employment. Best presents no allegations that these individual IDOC employees' acts were criminal, malicious, willful and wanton, or calculated to benefit the employee personally. Thus, they assert, under the Act, Best's state law tort claims are absolutely barred against Zatecky, Peterson, Duncan, Safford, and Hurt.

Best first responds that the Act cannot shield these individual Defendants from liability for federal constitutional violations brought under Section 1983. Best also argues that the individual Defendants are not immune under the Act because,

> [T]here exists adequate authority in this state to support the proposition that a public official, charged with the custody and care of a prisoner, owes a private duty to the prisoner to take reasonable precautions under the circumstances to preserve his life, health, and safety -- a duty which is in addition to the duty of safekeeping owed to the public generally. To the extent that [plaintiff's] allegations relate to the failure to perform this duty, they are sufficient to withstand a claim of immunity.

*Roberts v. State*, 307 N.E.2d 501, 505 (Ind. Ct. App. 1974) (citations omitted).

The Court notes that Best correctly points out that the Act cannot serve as a basis to shield Zatecky, Peterson, Duncan, Safford, and Hurt from liability for federal constitutional violations brought under Section 1983. However, this was not the argument of the State Defendants. Rather, they argue that the Act precludes state law tort claims, not Section 1983 claims.

The 1974 *Roberts* decision of the Indiana Court of Appeals did not address the Act, which is applicable to and controlling over Best's state law tort claims alleged in Count III. The Act is clear that, in order for Best to bring state law tort claims against the individual IDOC defendants, he must allege with a sufficient factual basis that their conduct was outside the scope of their employment and was criminal, malicious, willful and wanton, or calculated to benefit the

13

employee personally. Best's Complaint fails to make any of these allegations against Zatecky, Peterson, Duncan, Safford, and Hurt personally. Best's Complaint makes clear that his allegations in Count III are for state law tort claims based on these individuals' conduct while acting within the scope of their employment with IDOC. Therefore, the Act bars these state law tort claims against Zatecky, Peterson, Duncan, Safford, and Hurt, and the Court **GRANTS** the State Defendants' Motion to Dismiss Count III against them.

E.     **Count IV against IDOC, Zatecky, Corizon, and Dr. Talbot**

Count IV of the Complaint is asserted against IDOC, Zatecky, Corizon, and Dr. Talbot. In Count IV, Best alleges that these Defendants were deliberately indifferent to his medical condition, delayed his necessary treatment, and provided inadequate medical care. Best alleges these claims under the Eighth, Ninth, and Fourteenth Amendments and requests compensatory damages for personal injury, pain and suffering, emotional distress, and future pain and suffering.

The State Defendants ask the Court to dismiss Count IV against IDOC and Zatecky because the Act provides immunity to IDOC and Zatecky against liability for the acts or omissions of others, *see* Indiana Code § 34-13-3-3(10). They assert that this claim stems solely from the premise that IDOC and Zatecky are liable for the acts or omissions of Corizon and Dr. Talbot in providing inadequate medical care. Relying on *Bartholomew County v. Johnson*, the State Defendants argue if a loss results from the acts or omissions of a governmental entity's contractor, then the governmental entity is immune from liability for the loss even if it relates to a non-delegable duty. 995 N.E.2d 666, 678–79 (Ind. Ct. App. 2013). The State Defendants point out that Indiana Code § 34-13-3-3(10) does not contain an exception to the grant of immunity to government agencies for the acts or omissions of their contractors, again relying on *Bartholomew County v. Johnson*.

Pointing to the allegations in the Complaint, the State Defendants note that Best is seeking to hold IDOC and Zatecky liable for the acts and omissions of Corizon and Dr. Talbot relating to the medical care of Best. IDOC has delegated the responsibility of providing medical care via its contract with Corizon. They argue that the allegations do not support direct negligence on the part of IDOC or Zatecky, and the Act provides immunity to them against liability for the medical care provided or omitted by Corizon and Dr. Talbot.

The State Defendants also assert an additional basis to dismiss Count IV against IDOC and Zatecky: IDOC and Zatecky are not considered "persons" under Section 1983, so they cannot be held liable for any inadequate medical care under Section 1983, and the allegations fail to assert that Zatecky had any personal knowledge or involvement in Best's medical care.

Responding to the State Defendants' arguments, Best again relies on the 1974 *Roberts* decision of the Indiana Court of Appeals and asserts that the decision established a private duty owed by the State Defendants to Best to "take reasonable precautions to preserve his life, health and safety. Defendants had a non-delegable duty." (Filing No. 27 at 9–10.) Best also quotes from a portion of the *Bartholomew County* decision, which explains a principal generally is not liable for the negligence of its independent contractor but there is an exception to this general rule when the duty is non-delegable. *See Bartholomew County*, 995 N.E.2d at 675. Based on the language in *Bartholomew County*, Best argues that the State of Indiana may delegate to a private entity, like Corizon, its responsibility for providing medical care to prison inmates, but it cannot escape liability for inadequate medical care on the basis of that delegation to a third party. Best further argues that he has pled a sufficient factual basis to support an Eighth Amendment claim for inadequate medical care against IDOC and Zatecky.

15

The Court determines that Count IV against IDOC and Zatecky for inadequate medical care must be dismissed to the extent that the claim is asserted under state tort law. As the State Defendants correctly point out, the Act provides, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the . . . act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(10).

The language from the *Bartholomew County* decision on which Best relies—a quotation from a 1996 opinion—actually is just an explanation of old Indiana case law and does not reflect the current state of the law or the holding in *Bartholomew County*. Later in the *Bartholomew County* opinion, the court made clear that "Indiana Code Section 34-13-3-3(10) would be useless in situations involving an independent contractor if it did not apply to non-delegable duties, and we presume that the legislature did not enact a useless provision." *Bartholomew County*, 995 N.E.2d at 678–79 (citation and quotation marks omitted). Therefore, the Act does provide immunity, even for non-delegable duties, to IDOC and Zatecky for the acts or omissions of Corizon and Dr. Talbot in the provision of medical care to the extent the claim is brought pursuant to state tort law.

Regarding the claim for inadequate medical care as a constitutional violation, the State Defendants correctly assert that IDOC and Zatecky are not "persons" for purposes of Section 1983. States, state agencies, and state officials sued in their official capacity for damages are not "persons" under Section 1983. *Lapides*, 535 U.S. at 617; *Will*, 491 U.S. at 71. Thus, Best's claim against IDOC and Zatecky for inadequate medical care as a constitutional violation must be dismissed. Furthermore, the allegations in the Complaint do not provide a sufficient factual basis to assert a constitutional claim for inadequate medical care against Zatecky in his individual

capacity. Therefore, the Court **GRANTS** the State Defendants' Motion to Dismiss Count IV against IDOC and Zatecky.

## IV. CONCLUSION

For the above reasons, the State Defendants' Motion to Dismiss (Filing No. 21) is **GRANTED in part and DENIED in part**. Count I is dismissed as to the State of Indiana, IDOC, and Zatecky. Count I remains pending against Safford, Peterson, Duncan, Hurt, and King. Count II, brought against IDOC and Zatecky, is dismissed. Count III, brought against Zatecky, Peterson, Duncan, Safford, and Hurt, is dismissed. Count IV is dismissed as to IDOC and Zatecky but remains pending against Corizon and Dr. Talbot.[1] The State of Indiana, IDOC, and Zatecky are terminated as Defendants in this matter.

**SO ORDERED.**

Date: 9/14/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bessie M Davis
LAW OFFICE OF BESSIE M. DAVIS, LLC
legal2615@yahoo.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL, PC
jeb@bleekedilloncrandall.com

Britney Jade McMahan
BLEEKE DILLON CRANDALL, PC
britney@bleekedilloncrandall.com

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov

Jennifer Elizabeth Lemmon
INDIANA ATTORNEY GENERAL
jennifer.lemmon@atg.in.gov

Kelly Suzanne Witte
INDIANA ATTORNEY GENERAL
kelly.witte@atg.in.gov

---

[1] The claims that have been dismissed are dismissed with prejudice. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015) ("dismissal under Rule 12(b)(6) . . . is a dismissal with prejudice").