| | | |
|---|---|---|
| LARRY BEST, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-02549-TWP-MJD |
| | ) | |
| JOHN SAFFORD, JEFFERY KING, | ) | |
| BLAINE HURT, WALTER PETERSON, | ) | |
| HERBERT DUNCAN, CORIZON | ) | |
| HEALTH, INC., and PAUL A. TALBOT M.D., | ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER DENYING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants John Safford ("Safford"), Jeffery King ("King"), Blaine Hurt ("Hurt"), Walter Peterson ("Peterson"), and Herbert Duncan ("Duncan") (collectively, the "State Defendants") (Filing No. 78).[1] After spending more than three and a half years in administrative segregation at the Pendleton Correctional Facility ("Pendleton"), Plaintiff Larry Best, Jr. ("Best") was moved back into the general population at the prison, and two weeks later, he was attacked and seriously injured by other inmates. Best initiated this lawsuit against the State Defendants, Corizon Health, Inc. ("Corizon") and Paul A. Talbot, M.D. ("Dr. Talbot") for violating his Eighth, Ninth, and Fourteenth Amendment rights by failing to protect him and having a deliberate indifference toward his health and safety. The State Defendants seek summary judgment asserting that Best's claims are barred because he failed to exhaust his administrative remedies before filing this action. For the following reasons, the Court **denies** the State Defendants' Motion for Summary Judgment.

---

[1] Defendants State of Indiana, Indiana Department of Correction and Superintendent Dushan Zatecky joined in the Motion for Summary Judgment when it was filed, but they have been dismissed from this action. *See* Filing No. 90.

I.  **BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Best as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Best was an inmate at Pendleton during the time period relevant to the claims at issue in this action (Filing No. 97-2 at 1). While in custody at Pendleton, he was moved from the general prison population into restrictive housing and held in administrative segregation from December 2011 until July 24, 2015, because of acts and threats of violence against him by prison inmates who were members of the Brotherhood of the Aryan Nation (Filing No. 95-13 at 8; Filing No. 97-2 at 1). Safford was the Unit Team Manager at Pendleton, King was a prison caseworker and Hurt, Peterson and Duncan were correctional officers at Pendleton. The State Defendants knew that Best was subjected to a large number of threats of violence and acts of violence (Filing No. 95-13 at 12–14; Filing No. 95-11 at 6–11). However, the State Defendants did not conduct any investigation about the continued threats against Best while he was in administrative segregation (Filing No. 95-13 at 6).

While in administrative segregation, Best's life was threatened many times by an inmate in the presence of Safford (Filing No. 95-11 at 10–12). In January 2015, Best was assaulted by an inmate who threw hot liquid with glass shards on him while he was in his cell (Filing No. 97-2 at 1). Despite the acts of violence and threats of violence against Best, over his objection, Best was moved from restrictive housing into the general prison population on July 24, 2015 (Filing No. 95-11 at 11–14; Filing No. 97-2 at 1).

On August 7, 2015, only two weeks after being moved back to the general prison population, Best was attacked by other inmates. His attackers used large rocks (which prison officials had set in front of prison cell houses), placing the rocks inside socks and then beating Best with them. This attack occurred while Best was leaving the medical line at the prison infirmary, which was located in an area that was a "blind spot" for prison officials and was known to be a dangerous area. The area was known for inmate-on-inmate assaults because several attacks had occurred there. Best sustained severe lacerations and bruises to his head, face, back, shoulders, arms, right hand and wrist during the attack. He was bleeding profusely and sought medical treatment for his injuries. Immediately after the attack, Best was transferred back to restricted housing. During the weeks and months following the attack, Best suffered constant, severe headaches, dizziness, and blurred vision (Filing No. 97-2 at 2, 6; Filing No. 95-4; Filing No. 95-2; Filing No. 95-1).

On August 10, 2015, Best filed two informal grievances related to the August 7, 2015 assault (Filing No. 95-1; Filing No. 95-2). On August 21 and 28, 2015, Best filed formal grievances related to the August 7, 2015 assault (Filing No. 95-3; Filing No. 95-4). On September 16, 2015, Best filed another formal grievance related to the assault (Filing No. 95-6).

On August 28, 2015, Best's formal grievance from August 21, 2015 was returned, stating that the grievance contained "classification" as a requested form of relief and there was not enough information to warrant an investigation. Additional information was requested, but what additional information was required was not specified (Filing No. 97-2 at 2, ¶9). Best crossed out the "classification relief" and resubmitted the form. *Id.* at 3, ¶10.

On September 1, 2015, Camay Francum ("Francum"), the prison grievance specialist, returned the two formal grievances with a single return of grievance form, explaining that Best's

complaints involved a disciplinary hearing issue or action that was subject to a separate process. Francum's form also indicated that the complaint contained multiple issues or events, which should be separated and submitted on multiple forms. *Id.* at 3, ¶11. Best was confused as to why his grievances would be considered disciplinary issues, and he felt threatened by the suggestion of disciplinary issues. He was unsure how to proceed, so he submitted a single appeal for the returned formal grievances on the same day, September 1, 2015. *Id.* at 3, ¶¶12–13.

On September 3, 2015, Francum sent a short memo to Best. It stated, "I am returning this grievance appeal back because your grievance must be accepted, logged and DENIED; before you can file an Appeal. Please follow these steps prior to returning." (Filing No. 95-5.)

On September 11, 2015, Best received a response from Assistant Superintendent Duane Alsip ("Alsip") regarding his two informal grievances that had been filed on August 10, 2015 (Filing No. 97-2 at 3, ¶15; Filing No. 95-1; Filing No. 95-2). Alsip explained, "Your allegations are unfounded. You can only have one complaint on each form." (Filing No. 95-2.) Best disagreed with Alsip's explanation and resolution by signing the disagreement section of the form and returning it with a new formal grievance on September 16, 2015 (Filing No. 95-2; Filing No. 95-6; Filing No. 97-2 at 4, ¶16).

On October 1, 2015, Best's formal grievances from August 28 and September 16, 2015 were returned with the explanation concerning a disciplinary hearing issue or action and multiple issues or events (Filing No. 97-2 at 4, ¶17). The October 1, 2015 return of grievance form for the September 16, 2015 grievance also indicated, "You are identified as a grievance abuser. This grievance exceeds the number of active grievances you are allowed to have in the system. To proceed with this grievance, you must withdraw at least one active grievance." (Filing No. 95-7 at 1.)

4

Best requested guidance from prison officials regarding how to proceed with the grievance process given the unsatisfactory responses that he had received, but these prison officials refused to provide any guidance because they said that policies prohibited them from helping with the grievance process ([Filing No. 95-10 at 6](Filing No. 95-10 at 6)–7; [Filing No. 95-16 at 6](Filing No. 95-16 at 6)).  On October 5, 2015, Best resubmitted his August 28 and September 16, 2015 formal grievances to Indiana Department of Correction ("IDOC") Counselor Ballenger ([Filing No. 97-2 at 5](Filing No. 97-2 at 5), ¶21).  Best submitted a "request for interview" form to Francum on three different occasions to try to seek information on remedying any problems with his grievances, but Francum never responded or met with Best.  *Id.* at 5, ¶23.

On October 20, 2015, Francum returned the formal grievances, asserting that the forms were submitted too late, the complaints concerned disciplinary or classification issues, and the complaints concerned multiple issues or events ([Filing No. 95-7 at 2](Filing No. 95-7 at 2)–3; [Filing No. 97-2 at 5](Filing No. 97-2 at 5)–6, ¶24).  Pendleton Superintendent Zatecky acknowledged that Pendleton was having problems processing grievances in August and September 2015 because they had new personnel in the grievances department who needed to be properly trained ([Filing No. 95-16 at 4](Filing No. 95-16 at 4)–5).

Regarding the decision to reclassify Best from restrictive housing to general population just two weeks before the attack occurred, Best received a "report of classification hearing" form on August 3, 2015 (four days before the attack).  Best immediately submitted a request for interview to his caseworker to receive the form for classification appeal.  Best never received the appeal classification form from his caseworker because, unbeknownst to Best at the time, the caseworker had been transferred to a different facility.  He was attacked on August 7, 2015, and he never received the form to appeal his classification.  Rather, Best was moved back to restrictive housing immediately following his attack ([Filing No. 97-2 at 6](Filing No. 97-2 at 6), ¶27).

5

On September 26, 2016, Best filed this lawsuit, asserting claims under 42 U.S.C. § 1983 and state tort law against the State Defendants, Corizon, and Dr. Talbot. He asserted violation of his Eighth, Ninth, and Fourteenth Amendment rights because the defendants failed to protect him, had a deliberate indifference and reckless disregard toward his health and safety, provided inadequate medical care, and deprived him of the opportunity to serve his prison sentence without constant fear of threats and violence ([Filing No. 1](#)). Corizon and Dr. Talbot filed an Answer in response to Best's Complaint, and the State Defendants filed a Motion to Dismiss. The Court granted the Motion to Dismiss in part, and the State of Indiana, IDOC, and Superintendent Zatecky were dismissed from this action ([Filing No. 90 at 17](#)). Count I of the Complaint remains pending against Safford, Peterson, Duncan, Hurt, and King. Count IV of the Complaint remains pending against Corizon and Dr. Talbot. *Id.* Additional facts will be provided as needed in the discussion section below.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a

summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III. DISCUSSION

The State Defendants argue that Best's claims against them are barred because he failed to exhaust the administrative process. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that a prisoner must first exhaust his available administrative remedies before filing a lawsuit in the district court. The State Defendants note that, upon arrival at Pendleton, Best received a copy of Pendleton's facility handbook and facility grievance procedures ([Filing No. 80-4](Filing No. 80-4)). Thus, Best was aware of the grievance procedures that he would need to utilize to submit complaints regarding prison conditions. The handbook provides that at Pendleton, an inmate must first attempt to resolve any complaints informally, followed by two formal steps: a

7

formal written grievance and then an appeal of the response to the grievance (Filing No. 80-2 at 3).

The Seventh Circuit requires strict compliance with administrative exhaustion requirements before filing suit. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The State Defendants acknowledge that Best submitted an informal grievance on August 10, 2015, which received a response from Alsip. They also acknowledge that he submitted a formal grievance on August 28, 2015, which was rejected by Francum on October 20, 2015. The State Defendants then assert that Best failed to file an appeal of the formal grievance response, and this failure to appeal resulted in Best's lack of exhausting his administrative remedies. They contend that a separate administrative process exists for inmates to appeal classification decisions, and Best never utilized that process to appeal the decision to move him from restrictive housing to the general population. Thus, they argue, Best failed to exhaust his administrative remedies as to his classification, therefore, his claims are barred because he failed to exhaust administrative remedies as to any of his claims as required by the PLRA before filing suit.

Best responds by explaining that prison officials were guilty of great lapses in timeliness regarding their responsibilities in the grievance process. In light of the delayed and vague responses (and in some instances no response) that Best received to his informal and formal grievances and questions, he was deprived of the administrative grievance process and unable to "strictly comply" with the full administrative process. Best acknowledges the Seventh Circuit's direction to strictly comply with the requirement of exhausting administrative procedures. However, he also notes that prison officials must "ensure that prisoners have the necessary resources to avail themselves of the process," which "requires more than 'open door' policies that

presume prisoners know what questions to ask." *Dailey v. Francum*, 2015 U.S. Dist. LEXIS 81802, at *13 (S.D. Ind. June 24, 2015) (citing *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015)). Additionally, prisoners need only exhaust those remedies made available to them. Thus, if "prison staff fail to respond to a properly filed grievance or take affirmative steps to obstruct the grievance process, that remedy becomes unavailable to the prisoner." *Dailey*, 2015 U.S. Dist. LEXIS 81802, at *3 (citing *Dole*, 438 F.3d at 809; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). "When prison officials prevent inmates from using the administrative process, the process that exists on paper becomes unavailable in reality." *Id.* (quoting *Kaba*, 458 F.3d at 684).

The designated evidence shows that Best submitted two informal grievances in a timely manner on August 10, 2015, as well as a formal grievance on August 21, 2015, which specifically referred to the two informal grievances and the fact that those informal grievances had not been responded to ([Filing No. 95-3](#)). Because of a request from grievance specialist Francum, Best revised his August 21, 2015 formal grievance and submitted the revised formal grievance on August 28, 2015. On September 1, 2015, Francum returned the two formal grievances with a single return of grievance form, explaining that they involved a disciplinary hearing issue and contained multiple issues or events. Best submitted a single appeal for the returned formal grievances on the same day.

Best argues that the problem with the grievance process throughout August, September, and October 2015 was that Francum was new and inadequately trained, so she did not understand the grievance process and erroneously and repeatedly returned his grievances, which denied him access to the grievance process. He points out that even Superintendent Zatecky acknowledged that there was a problem in the grievance process during this time period because of new, inadequately trained personnel.

9

Best made six attempts to use the grievance process to submit a grievance regarding the August 7, 2015 assault, and these six attempts were returned by Francum. He contends that the grievance policy allowed him to file grievances related to one issue or event, but because of Francum's inexperience or intentional disregard of the policy, she misinterpreted the language of the policy to prohibit a request for more than one remedy or relief. Francum's return of grievance forms explained the grievances were returned for containing multiple issues, but she confused the multiple issues with multiple remedies or requests for relief. Francum and the other prison staff never explained to Best what he needed to do to cure any deficiencies. Best asserts that he was never given a chance to understand what the prison required.

Best argues that the error from Francum's repeated returns of his grievances was compounded by the fact that Francum wrongfully declared him to be a grievance abuser. Despite his request for a conference with Francum on three separate occasions to clarify what was required in the grievance process, Francum refused to meet with Best. Additionally, Best requested guidance from other prison officials about how to proceed with the grievance process, but these prison officials also refused to provide any guidance because they said that policies prohibited them from helping with the grievance process. IDOC's official "Offender Grievance Process" at § VIII(B), titled "Assistance with Preparation of Grievance," explicitly required staff to assist inmates in restrictive housing with preparation of grievances. The policy states, "In restrictive status housing units or other units where an offender does not have access to other offenders, the complaining offender may request that a staff person in that unit assist in the preparation of a grievance or an appeal." (Filing No. 80-2 at 11.) Best was in restrictive housing, yet he was denied assistance with the grievance process.

Best asserts that the grievance process was made unavailable to him because of the prison officials' errors and their further refusal to explain the process to him. He argues, in determining whether a particular remedy was available to a prisoner who allegedly failed to exhaust administrative remedies, the Seventh Circuit has held that "the key question is whether the prisoner or an official was at fault for the failure to complete the grievance process properly." *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1010 (W.D. Wis. 2009) (citing *Kaba*, 458 F.3d at 684–87). Best argues that clearly the prison officials were at fault in this case, and thus, his claims should not be dismissed for failure to exhaust administrative remedies.

Regarding the argument that Best never filed a classification appeal, Best responds that he requested the form but never received the form for the appeal prior to his August 7 assault. He argues that any remedy for a classification appeal was resolved and provided when he was reclassified and moved back to restrictive housing immediately after the attack. Furthermore, the period for filing the classification appeal was still open when Best was assaulted and then reclassified and moved to restrictive housing. It would have been a useless act for Best to file a classification appeal because he already was moved back to restrictive housing. Thus, the "remedy" was "unavailable" to Best because it already was provided, so there was no administrative process that Best needed to exhaust.

The State Defendants reply that Best never filed a grievance about a failure to protect him from the attack by fellow inmates against Hurt specifically. They argue that Best's grievance related to the "yard staff" was insufficient and it was the responsibility of Best to cure any deficiencies in the returned grievances, and he failed to do so. The State Defendants further argue that Best was required to appeal his classification decision before bringing his claims against them for deliberate indifference to his safety based on the classification decision. That appeal would

11

have given notice to the State Defendants of the alleged wrongs being claimed. Yet Best never filed such an appeal. Because Best did not file a classification appeal, the State Defendants, and more broadly IDOC, had no opportunity to take any action with respect to Best's removal from restrictive housing in July 2015. Finally, the State Defendants request that if the Court determines disputed issues of material fact preclude summary judgment, a hearing should be held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). They assert, "When there are disputed issues of fact pertaining to whether the prisoner exhausted, the Court is required to hold a hearing to resolve those disputes." *Corbin v. Indiana*, 2017 U.S. Dist. LEXIS 63679, at *18 (N.D. Ind. Apr. 26, 2017) (citing *Pavey*, 544 F.3d at 742).

The Court begins by explaining that there are no disputed issues of material fact that necessitate holding a *Pavey* hearing. The designated evidence reveals that the parties agree on the facts of this case, albeit the State Defendants left out significant facts regarding Best's attempts to utilize the grievance process. The dispute between the parties arises not out of the facts themselves but rather out of the parties' differing arguments and interpretations of those undisputed facts. The State Defendants understandably argue that their version of the facts suggests that administrative remedies were not exhausted, and if the Court does not agree, then a *Pavey* hearing should be held. However, a review of all the designated evidence indicates there is no dispute in the facts, therefore, a *Pavey* hearing is unnecessary.

Turning to the parties' arguments and the designated evidence, the Court determines that Best took the required steps to administratively pursue his claims with the prison officials and exhausted the administrative process before filing his claims in this Court. On August 10, 2015, Best filed two informal grievances related to the August 7, 2015 assault ([Filing No. 95-1](); [Filing No. 95-2]()). These informal grievances went unanswered beyond the period within which prison

officials were to respond. On August 21, 2015, Best filed a formal grievance related to the August 7, 2015 assault (Filing No. 95-3). On August 28, 2015, Best's formal grievance from August 21, 2015 was returned, and while additional information was requested, what additional information was required was not specified. On August 28, 2015, Best filed additional formal grievances (Filing No. 95-4; Filing No. 97-2 at 3, ¶10).

On September 1, 2015, Francum returned the two formal grievances, explaining that Best's complaints involved a disciplinary hearing issue and that the complaints contained multiple issues or events. Best was confused as to why his grievances would be considered disciplinary issues, and he felt threatened by the suggestion of disciplinary issues. He was unsure how to proceed, so he submitted a single appeal for the returned formal grievances on the same day (Filing No. 97-2 at 3, ¶¶12–13). Two days later, Francum sent a memo to Best, stating, "I am returning this grievance appeal back because your grievance must be accepted, logged and DENIED; before you can file an Appeal. Please follow these steps prior to returning." (Filing No. 95-5.)

On September 11, 2015, Best received an untimely response from Alsip regarding his two informal grievances that had been filed on August 10, 2015 (Filing No. 97-2 at 3, ¶15; Filing No. 95-1; Filing No. 95-2). Alsip explained, "Your allegations are unfounded. You can only have one complaint on each form." (Filing No. 95-2.) Best disagreed with Alsip's resolution, so he signed the disagreement section of the form and returned it with a new formal grievance on September 16, 2015 (Filing No. 95-2; Filing No. 95-6; Filing No. 97-2 at 4, ¶16).

On October 1, 2015, Best's formal grievances from August 28 and September 16 were returned with the explanation concerning a disciplinary hearing issue and multiple issues or events (Filing No. 97-2 at 4, ¶17). The October 1, 2015 return of grievance form for the September 16, 2015 grievance also indicated, "You are identified as a grievance abuser. This grievance exceeds

13

the number of active grievances you are allowed to have in the system. To proceed with this grievance, you must withdraw at least one active grievance." (Filing No. 95-7 at 1.)

Best requested guidance from prison officials about how to proceed with the grievance process, but they refused to provide any guidance. Best also asked for guidance from Francum on three different occasions, but she never responded or met with Best. On October 5, 2015, Best resubmitted his August 28 and September 16, 2015 formal grievances to IDOC Counselor Ballenger (Filing No. 97-2 at 5, ¶21).

On October 20, 2015, Francum returned the formal grievances, asserting that the forms were submitted too late, the complaints concerned disciplinary or classification issues, and the complaints concerned multiple issues or events (Filing No. 95-7 at 2–3; Filing No. 97-2 at 5–6, ¶24).

These undisputed facts as borne out by the designated evidence show that Best did all that he could to pursue his claims through the administrative process. All these events occurred during a time that Superintendent Zatecky acknowledged Pendleton was having problems processing grievances because of new personnel who needed to be properly trained (Filing No. 95-16 at 4–5).

The facts indicate that Best asked many times for guidance about the grievance process. However, rather than assisting an inmate held in restrictive housing with the grievance process as directed by the prison's official offender grievance policy, the prison staff refused to provide any guidance to Best in contravention of the policy. This lack of response to Best's requests for additional information or guidance concerning how he was to cure any deficiencies in his grievance submissions is significant. It is especially significant when viewed in conjunction with Francum's various responses that Best was a "grievance abuser," that his grievances were filed too late, and

that she was returning a grievance appeal because his grievance had to first be accepted, logged, and denied before he could file an appeal.

As another district court in the Seventh Circuit explained,

> The grievance process is not intended to be a game of "gotcha" or a test of the prisoner's fortitude or ability to outsmart the system. Rather, it is meant to provide notice to prison administrators of a problem so that they have an opportunity to address it without litigation. Plaintiff gave prison administrators at least three chances to address his grievance, but they rejected his attempt each time. Thus, this is not a case in which the prisoner is failing to provide proper notice or brazenly disregarding prison rules. It is a case in which it appears that even the prison administrators themselves do not know what plaintiff needed to do to complete the exhaustion process successfully.

*Shaw*, 607 F. Supp. 2d at 1010 (citations and quotation marks omitted). As the Seventh Circuit noted in *Dole*, "Unlike [other inmates] who simply chose not to file a grievance at all, the misstep in [Best's] case was entirely that of the prison system." *Dole*, 438 F.3d at 810. The designated evidence indicates that Best exhausted the administrative remedies that were made available to him. His grievances were sufficiently detailed to provide notice to prison administrators of the claims at issue in this case against these defendants so that they had an opportunity to address the claims without litigation.

Regarding the State Defendants' argument that Best never filed a classification appeal, Best's position is well-taken. It would have been a futile and pointless act for Best to file a classification appeal because he already was moved back to restrictive housing after his attack and before the time period had expired for filing such an appeal. Therefore, any remedy that could have been provided through a classification appeal was already provided to Best. The State Defendants complain that they had no opportunity to take action with respect to Best's removal from restrictive housing because Best did not file a classification appeal. However, they overlook the fact that they did take action with respect to Best's removal from restrictive housing when they

15

reclassified him and moved him back to restrictive housing. The State Defendants' argument that they are entitled to summary judgment because Best failed to exhaust administrative remedies is unavailing.

## IV. CONCLUSION

For the foregoing reasons, the State Defendants' Motion for Summary Judgment ([Filing No. 78](#)) is **DENIED**. On September 20, 2017, the Magistrate Judge stayed this case with the exception of discovery into and resolution of the State Defendants' Motion for Summary Judgment on the affirmative defense of failure to exhaust administrative remedies ([Filing No. 92](#)). The Court now **lifts the stay.** On its own motion, the Court **vacates** the current trial date of June 4, 2018 and final pretrial scheduled for May 10, 2018. The matter is rescheduled for final pretrial on March 13, 2019 at 2:00 p.m. in Room 330 and trial by jury on April 8, 2019 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and U.S. Courthouse, Indianapolis, Indiana. The parties are **ordered** to contact the Magistrate Judge within **ten (10) days** of the date of this Order to establish new case management deadlines that will facilitate the speedy resolution of this long-pending action.

**SO ORDERED.**

Date: 4/25/2018

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bessie M. Davis
LAW OFFICE OF BESSIE M. DAVIS, LLC
legal2615@yahoo.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL, PC
jeb@bleekedilloncrandall.com

Britney Jade McMahan
BLEEKE DILLON CRANDALL, PC
britney@bleekedilloncrandall.com

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov

Jennifer Elizabeth Lemmon
INDIANA ATTORNEY GENERAL
jennifer.lemmon@atg.in.gov

Kelly Suzanne Thompson
INDIANA ATTORNEY GENERAL
kelly.thompson@atg.in.gov